# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, ) <br> UNITED UNION OF ROOFERS, ) <br> WATERPROOFERS AND ALLIED ) <br> WORKERS LOCAL NUMBER 11, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 12 CV 7299 <br><br> Hon. Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiffs United Union of Roofers, Waterproofers and Allied Workers Local Number 11, and Warehouse Workers' Justice Center, Inc. ("Relators") filed this *qui tam* action on behalf of the United States against the City of Chicago; Mercy Portfolio Service ("MSP"); Preservation Housing Management, LLC; Preservation of Affordable Housing, LLC; KMA Holdings V., LLC; Brinshore Development, LLC; Safeway Construction Company, Inc.; Suarez Roofing, Inc.; DTA Development & Construction, Inc.; Celadon Holdings, Inc.; Three Corners, LLC; Madison Construction Company; V&G Construction; Oakk Leaf Construction, Inc.; Felipe Garcia; and Veronica Garcia (collectively, "Defendants"). Relators allege that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, when they received federal funds paid by the U.S. Department of Housing and Urban Development ("HUD") through the agency's Neighborhood Stabilization Program. Before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Procedure 12(b)(6). For the following reasons, the motions are granted and the case is dismissed without prejudice.

# I. BACKGROUND

**A. Facts**

In 2008, as part of its Neighborhood Stabilization Program ("NSP"), HUD began disbursing $6.82 billion of grants to state and local governments in an effort to stabilize communities across the country that suffered from an abundance of foreclosed and abandoned homes. The City of Chicago, a grantee, received three rounds of NSP disbursements totaling over $168 million. The City of Chicago designated MPS as sub-grantee to help coordinate the use of the funds and ensure that the ultimate recipients of the NSP funds complied with all federal, state, and city laws and regulations. The City of Chicago directed MPS to issue Requests for Proposals, seeking capable local developers and construction companies who could acquire and rehabilitate distressed property throughout the city. MPS then selected, and the City of Chicago distributed the NSP funds to the selected local developers and construction companies. According to Relators, Defendants fall into two categories: (1) the City of Chicago who applied for and received funds from HUD, along with MPS, who was hired to administer the disbursement of those funds to local recipients; and (2) the local developers and construction companies ("local contractors") who contracted with and received NSP grant money from the City of Chicago.

Prior to receiving the NSP funds, the City of Chicago and MPS "certified [their] compliance with the Davis-Bacon Act requirements as conditions of payment." Second Am. Compl. & Jury Demand ¶ 32. Relators allege that the City of Chicago and MPS "fail[ed] to uphold [their] obligations under the Davis-Bacon Act," which requires "proper payment of the prevailing wages to workers on the NSP-funded properties." Id. ¶¶ 19-20.

The Requests for Proposals advertised by MPS notified potential fund recipients: "All NSP developers will be required to pay their contractors Davis-Bacon wages and maintain records that demonstrate their compliance." Id. ¶ 42. If selected, recipients of NSP funds were required to "pay wages at rates not less than those prevailing on similar construction in the locality as determined by the Secretary of Labor in accordance with the Davis-Bacon Act." Id. ¶ 50. Relators aver that the duty to comply with the Davis-Bacon Act also flows down to each entity which receives federal funds, including contractors and subcontractors.

Relators allege that violations of the Davis-Bacon Act occurred at six NSP sites; however, according to Relators, there may be numerous other NSP locations where infractions occurred and may continue to occur. Additionally, Relators allege that these six NSP properties contain eight or more units, which invokes Davis-Bacon Act compliance. Relators allege that the employers at each of these six sites violated the Davis-Bacon Act by certifying to the U.S. Department of Labor ("DOL") that they pay the prevailing wages determined by the Secretary of Labor, and mandated by the Davis-Bacon Act, yet they actually pay construction workers considerably less. Relators base these alleged violations upon reports from members of their staff who visited each site and spoke with one or more tradesmen on-site. During these conversations, the unidentified tradesmen allegedly told Relators' staff that they work for one of the local contractors, and that their pay is significantly lower than the prevailing Davis-Bacon Act wage. Relators rely "upon information and belief" to assert that Defendants submitted false certifications to the United States government as part of the NSP funding process in violation of the FCA. Id. ¶¶ 112, 115, 117, 122, 125, 129, 135.

## A. Procedural History

On September 12, 2012, Relators initiated this *qui tam* action. The United States declined to intervene on October 25, 2013. Relators filed their Second Amended Complaint on April 10, 2014. Relators allege that Defendants presented fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(a) (Count I), used false records or statements material to the fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(b) (Count II), and conspired to present the fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(c) (Count III). Subsequently, Relators voluntarily dismissed Count III. Defendants' motions to dismiss the remaining claims are fully briefed and before the Court.

## II. DISCUSSION

## A. Standard of Decision

A plaintiff's complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To avoid dismissal under Rule 12(b)(6), plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court accepts "well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 129 U.S. at 680-81).

Additionally, when a plaintiff alleges fraud, as is the case in a claim under the FCA, the complaint is subject to a heightened pleading requirement. United States ex rel. Gross v. Aids Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir. 2005). The complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must allege "the who, what, when, where, and how" of the fraudulent conduct. Id. at 605 (citing United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 376 (7th Cir. 2003)). "It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." United States ex rel. Lusby v. Rolls-Royce Corp., 507 F.3d 849, 855 (7th Cir. 2009) (citations omitted).

**B. Whether Relator Sufficiently Plead the Circumstances Constituting Fraud Against the Local Contractors.**

The FCA imposes liability against any person or entity that "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)-(2). To state a claim under the FCA, a relator must allege: "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false." Gross, 415 F.3d at 604. Additionally, "[a]n FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be a condition of or prerequisite to government payment." Id. The Davis-Bacon Act requires recipients of federal funds "to make payment in accordance with the prevailing wage determinations of the Secretary of Labor" to construction workers on federal construction projects. 42 U.S.C. § 3142; see also 42 U.S.C. § 5310. Thus, if the local contractors falsely

certified their compliance with the Davis-Bacon Act to the DOL, they could be liable under the FCA.

At this early stage of the litigation, "a relator need not produce a copy of the actual document making the false claim." Leveski v. ITT Educ. Servs., 719 F.3d 818, 838 (7th Cir. 2013); see also Lusby, 507 F.3d at 854 ("We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit."). "To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement)." Lusby, 507 F.3d at 855. However, a relator must "do more than the usual investigation before filing his complaint." Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999).

Many FCA claims are filed by someone employed by the organization accused in the suit or by an individual privy to the fraudulent transactions, because such an intricate insider view can reveal how the fraud was concocted, who submitted the false claims to the government, which particular claims were fraudulent, and what about the claims was fraudulent. See, e.g., Lusby, 507 F.3d at 850 (relator worked for defendant); Garst, 328 F.3d at 375 (relator worked for U.S. Veteran Affairs); United States ex rel. Rueter v. Sparks, 939 F. Supp. 636, 637 (C.D. Ill. Sept. 17, 1996) (relator was a former employee of defendant in a *qui tam* suit alleging Davis-Bacon Act violations). That is not to say that a union cannot adequately serve as a relator. See United States ex rel. Sheet Metal Workers Intern. Ass'n, Local Union No. 20 v. Horning Investments, LLC, No. 1:12-cv-00830, 2013 WL 5503327, at *1 (S.D. Ind. Oct. 1, 2013) (finding that the complaint filed by a union survived a Rule 12(b)(6) motion to dismiss). Because a union must plead fraud with particularity like any other relator, it might need to rely on

information provided by one of its union members formerly employed by the company accused of violating the FCA. Id.

In this case, Relators, two unions, selected six NSP projects and directed their staff to interview tradesmen at the sites. Relators allege that the conversations between Relators' staff and on-site tradesmen revealed that construction workers were being paid less than the Davis-Bacon Act prevailing wage. However, Relators have not identified any of the tradesmen or whether they work for any of the local contractors. Furthermore, Relators have not alleged which employee or manager working for the local contractors submitted Davis-Bacon compliance certifications to the DOL, when local contractors submitted false certifications to the DOL, or what the submitted certifications stated. In Lusby, for example, a case where the relator alleged that the defendant lied about the quality of turbine blades that it sold the government, "the complaint named specific parts shipped on specific dates, and it relate[d] details of payment." 570 F.3d at 854. Relators' complaint, by contrast, is devoid of specificity. Without naming any individual who prepared or presented the Davis-Bacon certifications to the DOL, when the certifications were sent, or what information the certifications contained, Relators rely "upon information and belief" to assert that construction workers were being underpaid and that the certifications were false. Relators' allegations that the local contractors violated the Davis-Bacon Act and the FCA are vague and unsubstantiated, and therefore, fail to meet the particularity requirement of Rule 9(b).

Furthermore, as Relators' Second Amended Complaint correctly states, the Davis-Bacon Act requirements apply to housing rehabilitation projects of eight units or more. ¶ 51; see also 24 C.F.R. § 570.603. However, their allegation that "[t]hese projects all have the requisite number of units necessary such that the prevailing wage must be paid," Second Am. Compl. & Jury

Demand ¶ 113, is deficient—it is conclusory and is not entitled to the presumption of truth, McCauley, 671 F.3d at 616.

## C. Whether Relator Sufficiently Plead the Circumstances Constituting Fraud Against the City of Chicago and MPS.

Relators' claims against the City of Chicago and MPS are similarly deficient under Rule 9. Relators aver that the City of Chicago received NSP funds on three occasions; and as a prerequisite, it certified that it would comply with the Davis-Bacon Act. The City of Chicago then partnered with MPS to ensure local contractors complied with the Act. Relators allege that the City of Chicago and MPS failed to uphold their obligations. Even if the Court accepts as true Relators' assertion that construction workers at NSP sites are being paid in violation of the Davis-Bacon Act, their allegations against the City of Chicago and MPS do not rise to fraudulent conduct under the FCA. Rather, Relators' assertion only amounts to allegations that the City of Chicago and MPS broke their promises to ensure legal and regulatory compliance. "Yet failing to keep one's promise is just breach of contract." Garst, 328 F.3d at 378.

To survive a motion to dismiss, Relators must allege that the City of Chicago and MPS "said something knowing at the time that the representation was false (or not intending to perform)." Id. However, "failures to satisfy the customer *ex post* are not fraud ... there is no 'fraud by hindsight.'" Id. Relators' Second Amended Complaint is devoid of any allegation that the City of Chicago or MPS intended to break their promises at the time of, or prior to, receiving federal funds. See Lusby, 570 F.3d at 854 (holding that the relator alleged fraud with particularly when the "complaint allege[d] the promise, the intent not to keep that promise, and the details of non-conformity"). Relator accused the City of Chicago and MPS of "failure to uphold its obligations." Second Am. Compl. & Jury Demand ¶¶ 19-20. Without any particular allegations that the City of Chicago or MPS knew that it would not comply with the Davis-Bacon Act at the

8

time they made the representation to HUD, Relators' claims against them are insufficient under Rule 9(b).

### III. CONCLUSION

"Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual), because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it, and because charges of fraud … frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships." Ackerman, 172 F.3d at 469 (citations omitted). For the foregoing reasons, Defendants' motions to dismiss are granted without prejudice. Relators may file an amended complaint on or before December 8, 2014.

IT IS SO ORDERED.

ENTER:

_[signature]_
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 12, 2014